# CIRCUIT COURT OF ROCKINGHAM COUNTY

Commonwealth of Virginia

 v.

April May

July 28, 2003

Case No. 27695

BY JUDGE JOHN J. McGRATH, JR.

On January 24, 2003, the Clerk of the Juvenile and Domestic Relations District Court of Rockingham County issued a Criminal Show Cause Summons requiring the Appellant, April May, to show cause why she should not be fined, imprisoned, or otherwise punished pursuant to § 18.2-456 of the Code of Virginia for failure to attend school as required by a prior Order of the Juvenile and Domestic Relations District Court. The matter was heard on February 24, 2003, and the Juvenile and Domestic Relations District Court issued the following Findings and Order:

> Defendant appears; since last Court date, she has missed 15 more days of school; she had 25 days detention suspended from last Court date.
> It is ordered that she complete 100 hours c/s [community service] work. She is ordered to serve 10 days of the 25 day jail sentence. She is released from any further school attendance. The c/s work is to be completed by 2 June 03 @ 10:30 A.M.

An appeal was noted to this Court on February 25, 2003.

An attorney of the local bar, L. Quinn Kaylor, Esquire, requested and, with consent of the parties, was permitted to file a legal brief as an *amicus curiae* on the various legal issues raised in this appeal. After a number of continuances, the appeal was heard on June 10, 2003.

*Facts*

The Appellant, April May, who turned eighteen years old on February 22, 2003, was a "student" with a long history of having extreme difficulty in attending school on a regular basis. Therefore, on December 8, 2000, the School District's Attendance Officer filed a Petition under § 16.1-241(A)(1) in the Juvenile and Domestic Relations District Court to have Appellant declared a Child In Need of Supervision (CHINS). The Petition alleged, *inter alia*:

> She is a child in need of supervision in that while subject to compulsory school attendance is habitually and without justification absent from Harrisonburg High School, having been absent 29 out of 69 possible days with 28 days tardy.

Thus, on February 5, 2001, the Juvenile and Domestic Relations District Court found that the Appellant was a "Child In Need of Supervision" because of truancy. The Court ordered that:

> The child shall attend school every day, starting 2/6/01. She shall be *on time*. She shall be cooperative and *non-disruptive*. She will comply w/ all regs. of the Interdisciplinary Team Reports of October 2000. She shall attend Jack Smith School Attendance Program. The child and her parents shall cooperate with and attend meetings of the Interdisciplinary Team.

(Emphasis in original.)

Ten days later, on February 15, 2001, the Interdisciplinary Team issued an additional report recommending that:

> 1. April should attend school each day school is in session for the 2000-2001 school year, remain the full school day and comply with all rules and regulations as set forth by school officials in the student handbook and complete all homework

and classroom assignments. Any absence from school for illness requires a doctor's statement at return.

2. That the court consider ordering custody to the Department of Social Services if April does not return to school on a regular basis.

3. That April be referred to the McNulty Center for Children and Families for family counseling and other services that may be recommended. . . .

15. If April fails to comply with the order of the court and is found guilty of contempt, that April be placed in the Shenandoah Valley Detention Home for up to ten (10) days.

Ex. 8.

This began a regular course of Appellant's being served with motions to show cause why she should not be found in criminal contempt of court pursuant to § 18.2-456 for failure to follow a direct court order for "school attendance and satisfactory progress." The first such Show Cause Summons was issued on March 1, 2001, and heard on May 19, 2001. The Juvenile and Domestic Relations District Court found that, since February 5, 2001, Appellant had missed eleven more days of school, and was late on twelve other occasions. For the school year to date, September 2000 to March 1, 2001, she had 61 unexcused absences and 48 tardies.

The Court found her in contempt under § 18.2-456, sentenced her to ten days in detention and ordered her to "attend school all day, every day on time and make satisfactory progress." The Appellant went through separate proceedings virtually identical to this on April 30, 2001, July 16, 2001, February 4, 2002, September 16, 2002, December 2, 2002, and February 24, 2003, the Order from which this appeal was taken. The record is somewhat confusing, but it appears that the Appellant has been found in contempt under § 18.2-456 approximately five times for being a truant and has been sentenced to 55 days of detention and has actually served 35 days in detention for violation of Court orders requiring her to go to school every day. The current Order before this Court would require her to serve an additional ten days in jail.

### Appellant's Legal Position

Appellant's principle argument (reference to Appellant's arguments includes arguments put forward by *Amicus*) is that the Juvenile and Domestic

Relations District Court does not have jurisdiction or statutory authority to elevate what is at most a "status offense" of truancy to the level of a criminal infraction by merely "ordering" truants to go to school and then holding them in criminal contempt for failure to do so. Appellant asserts that this is a broad and pervasive practice used by the school authorities, the Commonwealth Attorney's office, and the Juvenile and Domestic Relations District Court to circumvent the legislature's careful attempt to provide services to truants and to use punishment only as a last resort for children who violate the Commonwealth's laws on compulsory school attendance.

The Appellant and *Amicus* also make many subsidiary arguments concerning numerous alleged errors committed by the Court below, and this Court will attempt to deal with each of them in a coherent fashion.

*Legal Analysis*

A. *Failure of School Board to Comply with § 22.1-258 and § 16.1-228 of the Code of Virginia, 1950, As Amended*

Section 16.1-228 of the Code of Virginia defines a "child in need of supervision" as a child who is habitually absent from school and:

> (i) the child has been offered an adequate opportunity to receive the benefit of any and all educational services and programs that are required to be provided by law and which meet the child's particular educational needs; (ii) the School System from which the child is absent ... has made a reasonable effort to effect the child's regular attendance without success; and (iii) *the school system has provided documentation that it has complied with the provisions of § 22.1-258.*

(Emphasis added.) In turn, § 22.1-258 of the Code requires certain conferences and remedial steps to attempt to get the truant back to school, and, if these efforts fail, the School System is authorized to file "a complaint with the juvenile and domestic relations court alleging the pupil is a Child In Need of Supervision as defined in § 16.2-228. . . ."

Appellant's argument is that there was no documentation provided by the school system proving that they had complied with § 22.1-258 so they could not proceed to declare April May a "CHINS." Although there is a document in

the file purporting to be a recitation of the efforts the school district took to comply with § 22.1-258, the document is, to say the least, confusing. It is undated, but appears to record or call for a conference on February 15, 2001 for absences that occurred in *September and October of 2001*! Appellant suggests that the conference date of "February 15, 2001," should actually read "February 15, 2002." However, from the record, there appears not to have been any meetings of an Interdisciplinary Team on February 15, 2002. A more logical reading (based on the list of attendees) is that this compliance report (although incompletely filled out) was the result of either an October 2, 2000, meeting or of a February 15, 2001, meeting of the Interdisciplinary Team.

The confusion in the record is sufficient for this Court to find that, if a properly filed document showing compliance with § 22.1-258 is a condition precedent to a child's being declared a CHINS-Supervision, that condition precedent has not been established in this case.

However, a more fundamental question is whether the CHINS-Supervision (or as referred to in the Order "CHINS-Education") Order of February 5, 2001, may be collaterally challenged at this time or whether that should have been done by a timely noticed direct appeal pursuant § 16.1-296.

Appellant argues that a direct appeal was not necessary because the failure of the School Board to file in the Juvenile and Domestic Relations District Court written evidence of compliance with § 22.1-258 means that the Juvenile and Domestic Relations District Court never had jurisdiction to declare her a CHINS. Appellant argues that the Court's order is void and, therefore, not able to be the basis of a contempt. Although there is a fairly fine line between void and voidable orders (*compare Rose v. Commonwealth*, 265 Va. 430 (2003), *with Nelson v. Warden of Keen Mountain Correctional Center*, 262 Va. 276 (2000)), it appears to this Court that the documentation and filing requirement of § 16.1-228 to show compliance with § 22.1-258 does not affect the *in personam* or *in rem* jurisdiction of the Juvenile and Domestic Relations District Court. Thus, the CHINS Order of February 5, 2001, may well have been defective and thus voidable because of improper documented compliance with § 22.1-258, but, because no motion to reconsider was made within twenty-one days and no appeal to the Circuit Court was lodged within ten days, it cannot be collaterally attacked in this contempt proceeding. As stated by the Supreme Court in *Nelson v. Warden, supra*:

> In contrast, Nelson did not preserve the error in the juvenile court's failure to give his father notice and did not raise the

> issue until he filed his petition for a writ of habeas corpus in this Court. Because Nelson's convictions were merely voidable, his failure to raise the issue in a timely manner constitutes a waiver of the error and results in the dismissal of his petition.

*Id.* at 285.

In this proceeding, the CHINS Order of February 5, 2001, may well have been in error for failure to follow a number of the statute's mandatory procedures. However, these deficiencies cannot be collaterally attacked in a contempt proceeding. Nevertheless, in formulating these orders, care must be taken to assure that all of the remedial and documentation steps required by the Legislature have been followed. Attached as Exhibit A to this Order is an earlier CHINS order entered for April May on January 16, 1997, by the late Honorable Charles S. McNulty, III. When an order such as the attached is used to find a child a "CHINS," it assures that the necessary conditions precedent have been met and that a reviewing court has a documented finding that the statutory mandates have been followed in the lower court.

**B.** *May the Juvenile and Domestic Relations District Court Confine a Juvenile in a Detention Facility under § 18.2-456 for Failure To Attend School after Being Court Ordered To Do So?*

Appellant argues that the entire thrust of the CHINS system and the provisions for compulsory school attendance and truancy prevention are remedial in nature and not designed to "punish" minors for failing to attend school. Appellant aptly points out that in Chapter 14 of Title 22 of the Code of Virginia, the sections which deal with compulsory school attendance, provide only for criminal penalties for parents whose children are habitually truant. *E.g.* Va. Code § 22.1-258. Similarly, § 16.1-292(F) itself provides: "Nothing in this section shall be construed to reclassify a child in need of services or in need of supervision as a delinquent."

The basic issue raised by Appellant is driven by the fact that § 16.1-292 of the Virginia Code, which provides the enforcement mechanisms for violations of Orders entered under §§ 16.1-278.2 through 16.1-278.19, contains provisions which are difficult, if not impossible, to reconcile.

On the one hand, there is the specific enforcement provision directed to CHINS-Supervision cases found in § 16.2-292(E), which provides a graduated scale of treatment and coercion to get truant children to attend school. These

enforcement devices consist, *inter alia*, of the following "punishments" to be taken after counseling and other treatment options have failed:

> (1) Suspend child's driver's license;
>
> (2) Order child over fourteen into a foster home, group home, or other non-secure residential facility;
>
> (3) Or, if the Court finds (i) that such placement described in 2, *supra*, is not likely to meet the child's needs; and (ii) that all other treatment opportunities in the community have been exhausted; and (iii) that secure placement is necessary, then the Court may order detention in a secure facility for a period of time not to exceed ten (10) consecutive days for violation of any Order of the Court arising out of the same petition; and
>
> (4) If detention is ordered, the Juvenile and Domestic Relations District court shall state in its Order for Detention the basis for all findings required by this Section.

Appellant argues, and correctly so, that the Juvenile and Domestic Relations District Court Order appealed from here contained no indication of complying with the provisions of § 16.1-292(E). There was no finding that a foster home, group home, or other non-secure facility would not meet appellant's needs, nor was there a finding that "other treatment opportunities in the community had been exhausted." If the "confinement" or "detention" appealed from in this case had been premised upon the Juvenile and Domestic Relations District Court's power derived from § 16.1-292(E), it would clearly be in error.

Appellant also argues that § 16.1-292(C) clearly precludes the Juvenile and Domestic Relations District Courts from using contempt powers to force school attendance *in lieu* of § 16.1-292(E) proceedings. That portion of the statute reads:

> C. Notwithstanding the contempt power of the court, the court shall be limited in the actions it may take with respect to a child violating the terms and conditions of an Order to those which the court could have taken at the time of the court's original disposition pursuant to §§ 16.1-278.2 through 16.1-278.10, except as hereinafter provided. However, this limitation shall not be

construed to deprive the court of its power to (i) punish a child summarily for contempt for acts set forth in § 18.2-456. . . .

Appellant's position is the Juvenile and Domestic Relations District Court is limited "notwithstanding its contempt power" to using sanctions which were available at the original finding on the CHINS petition (which do not include detention or confinement). Appellant further argues that the final qualifying clause preserving the Juvenile and Domestic Relations District Court's powers under § 18.2-456 can only be read to mean that the Juvenile and Domestic Relations District Court has the traditional powers to summarily punish minors who disrupt court proceedings or subvert the course of justice.

In essence, Appellant argues that § 16.1-292 clearly demonstrates a legislative attempt to do two things: (i) to provide that detention of a juvenile truant only be undertaken after extensive efforts have been made using foster care, group homes, and/or counseling to obtain compliance, with detention being used only as a last resort and subject to the procedural safeguards of § 16.1-292(E), and (ii) to assure that the Juvenile and Domestic Relations District Court has summary contempt power under § 18.2-456 to assure that juveniles who disrupt court proceedings can be dealt with in an appropriate and prompt fashion. Appellant contends when read in this light, all the provisions of § 16.1-292 are harmonious and make sense.

However, Appellee argues that § 16.1-292 explicitly provides that the Juvenile and Domestic Relations District Court has the inherent and continuing authority to punish deliberate non-compliance with its Orders as criminal contempt under § 18.2-456. In fact, § 16.1-292(A) provides, *inter alia*:

> Except as otherwise expressly provided herein, nothing in this chapter shall deprive the Court of its power to punish summarily for contempt for such acts as set forth in § 18.2-456, or to punish for contempt after notice and an opportunity for a hearing on the contempt except that confinement in the case of a juvenile shall be in a secure facility for juveniles rather than in a jail and shall not exceed a period of ten days for each offense.

Thus, Appellee contends that the Juvenile and Domestic Relations District Courts' contempt power under § 18.2-456 is in no way restricted by § 16.1-292(A) or (C), and thus the Juvenile and Domestic Relations Court may

proceed for contempt under § 18.2-456 and not be bound by the strictures of § 16.1-292(E).

The Court is required to look at the statute as a whole and attempt to reconcile various portions to avoid a conflict in the statute and thus rendering the statute a meaningless nullity. The statement in § 16.1-292(A) that this provision of § 16.1-292 does not "deprive the court of its power to punish summarily for contempt for such acts under § 18.2-456" is preceded by the qualifier: "*Except as otherwise expressly provided herein.*" (Emphasis added.) In order to reconcile the two provisions, it appears that the statute contemplates that the Juvenile and Domestic Relations District Court can punish summarily under § 18.2-456 for certain types of contempt such as outbursts in the courtroom, assaulting court personnel, etc. However, when it comes to punishing a minor who has been found a CHINS for failing to go to school (even when ordered by a Court to do so) the Juvenile and Domestic Relations District Court would be limited by the "except as otherwise expressly provided herein" provision because § 16.1-292(E) expressly provides the steps required to incarcerate a CHINS-Supervision child, *i.e.* various findings that less punitive measures were not available or not likely to work.

Reading the statute in this manner would reconcile all portions of the statute and make the statute logical and workable and not render any portion of it a nullity. Thus, a Juvenile and Domestic Relations District Court would have summary contempt power to maintain the integrity of its courtroom and process and protect against the subversion of justice by litigants, including minors, and it would have power to confine truants for not going to school but only after the statutory findings mandated by the Legislature had been made that less punitive measures were unavailable.

As logical as this reading may be, it is foreclosed to this Court by the Court of Appeal's ruling in *B. P. v. Commonwealth*, 38 Va. App. 735 (2002). The primary issue framed before the Court in *B. P. v. Commonwealth, supra*, appears to have been the issue of the Juvenile and Domestic Relations District Court's jurisdiction to issue an interlocutory order requiring a child to attend school while a CHINS petition was being processed.

However, in ruling on this issue, the Court of Appeals stated:

> Therefore, we hold the JDR court possessed authority to issue an interlocutory order requiring B. P. to comply with the law of the Commonwealth mandating her attendance at school. *Code §§ 16.1-227* and *16.1-241(A)* provide such authority. We

further hold that as the interlocutory order to attend school was property issued, *Code § 16.1-292(A)* ... authorized the JDR court and circuit court to enforce that order. *This statute provides a court with the authority to punish for contempt the violation of its order. As the record clearly supports the circuit court's finding that B. P. violated the school attendance order. Code § 16.1-292(A) specifically provides for the penalty adjudicated in this case. "Confinement ... in a secure facility for juveniles ... not to exceed ten days. . . ."*

Accordingly, we affirm the circuit court's decision that the JDR court had authority to issue the interlocutory school attendance order and to hold B. P. in contempt when she failed to obey that order.

*Id.* at 740 (emphasis added and footnote omitted).

This ruling of the Court of Appeals appears to hold clearly that the Juvenile and Domestic Relations District Court may punish by contempt a minor's failure to obey a Court order to go to school. Appellant attempts to distinguish this case by pointing out that *B. P. v. Commonwealth, supra,* deals with an interlocutory order and not an order entered after a CHINS finding had already been made. Although this is true, there is no suggestion in the opinion of the Court of Appeals that its ruling is premised upon the interlocutory nature of the Order. Indeed, it would seem quite inapposite to find that the Juvenile and Domestic Relations District Court could punish for contempt under § 18.2-456 the failure to obey an interlocutory order to go to school, but could not do so for an Order entered after a full hearing.

As construed by the Court of Appeals in *B. P. v. Commonwealth, supra,* there is an inherent tension built into § 16.1-292. On the one hand, detention may be ordered for contempt of a court order to go to school (with no need to show the futility of less restrictive remedies), but the failure to go to school without a court order can only be punished by detention if the procedural and substantive safeguards of § 16.1-292(E) are observed. This tension, however, will have to be dealt with by the appellate courts and/or the Legislature, because this Court is bound by the appellate authority.

*(C) Is Contempt Punished by Detention Limited to One Detention per CHINS Finding?*

Appellant further argues in the alternative that, even if the Court has power under § 18.2-456 to order detention, § 16.1-292(E) provides that a CHINS-Supervision child may be detained in secure facility "for a period of time not to exceed ten consecutive days for violation of any order of the court *arising out of the same petition*" (emphasis added). Appellant further argues that under § 16.1-260(B) that successive CHINS petitions were contemplated by the statute because it states that an intake officer shall file a petition for a declaration if "the juvenile had previously ... been adjudicated in the need of supervision. . . ."

Under the statute, there appears to be no question that multiple successive petitions for CHINS may be filed on a given child. In fact, on January 16, 1997, the Juvenile and Domestic Relations District Court of Rockingham County had entered a final CHINS order for April May because of her persistent truancy from the Rockingham County School System. However, there is nothing in § 18.2-292(E) which limits detentions to only one ten-day detention per CHINS petition. There can be multiple confinement orders whether under § 18.2-456 or § 16.1-292(E) issued under the same CHINS Petition. The caveat in § 16.1-292(E) only limits the confinement to ten days *"for any Order of the Court arising out of the same petition"* (emphasis added). In this proceeding, each confinement Order of the lower Court was issued for violation of separate school attendance orders, all of which were issued under one CHINS petition. The punishment was for violating separate Court orders and not for violating the CHINS order. Therefore, Appellant's argument in this regard does not carry the day.

Wherefore, the Court finds that the Court's contempt power under § 18.2-456 is not constrained by the provisions of § 16.1-292(C) or (E) because of the holding in *B. P. v. Commonwealth*, 38 Va. App. 735 (2002), and that Appellant, April May, was in contempt of the Juvenile and Domestic Relations District Court's Order of December 2, 2002, and is, therefore, ordered confined in the Rockingham County Jail for a ten day period.

Appellant and her counsel are ordered to appear before this Court on August 5, 2003, at 9:00 A.M. for imposition of sentence and to determine whether a stay of execution of the sentence will be requested pending an appeal.

The Clerk is directed to send attested copies of this Opinion and Order to Danita S. Alt, Esquire, counsel for the appellant, to Sheila Keesee, Esquire, Assistant Commonwealth's Attorney, and to L. Quinn Kaylor, Esquire, *Amicus Curiae*, and the Clerk is directed to send a summons to April May, to appear in this Court on August 5, 2003, at 9:00 A.M.